# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELLEN JEANENE PALMER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF CLYDE LEE DENBOW | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | C. A. No. 1:14-cv-01064-SLR-SRF |
| AIR & LIQUID SYSTEMS CORPORATION, BUFFALO PUMPS DIVISION, et al. | § § § | |
| Defendants. | § | |

### CBS CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND OPENING BRIEF IN SUPPORT THEREOF

SWARTZ CAMPBELL LLC

Beth E. Valocchi, Esquire (DE No. 2294)
Jennifer A. Kapes, Esquire (DE No. 4419)
Shawn E. Martyniak, Esquire (DE No. 4433)
300 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
302-656-5935

bvalocchi@swartzcampbell.com
jkapes@swartzcampbell.com
smartyniak@swartzcampbell.com

*Attorneys for CBS Corporation*

Dated: July 12, 2016

## **TABLE OF CONTENTS**

Table of Authorities ..................................................................................................ii

    I.     NATURE AND STAGE OF PROCEEDINGS ...................................................1

    II.    SUMMARY OF ARGUMENT ........................................................................1

    III.   STATEMENT OF FACTS ...............................................................................2

    IV.   ARGUMENT ....................................................................................................4

        A.   Summary Judgment Standard ...............................................................4

        B.   Failure of Plaintiff's Proof of Westinghouse-Specific Exposure/Causation .......4

        C.   Westinghouse's Lack of Duty as to Equipment Insulation-Related Injuries ......6

    V.    CONCLUSION ...............................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Braaten v. Saberhagen Holdings*,
    198 P.3d 493 (Wash. 2008).............................................................................. 9, 10

*Cabasug v. Crane Co.*,
    989 F. Supp. 2d 1027 (D. Haw. Nov. 26. 2013) ............................................8

*Cabasug v. Crane Co.*,
    2013 U.S. Dist. LEXIS 180917 (D. Haw. Dec. 27, 2013).............................8

*Celotex v. Catrett*,
    477 U.S. 317, 323–24 (1986) .........................................................................4

*Conner v. Alfa Laval, Inc.*,
    842 F.Supp.2d 791 (E.D. Pa. 2012) ................................................7, 8, 9, 10, 11

*Conshenti v. Pub. Serv. Elec. & Gas Co.*,
    364 F.3d 135 (3d Cir.004) .............................................................................4

*Crater v. 3M Co.*,
    2012 U.S. Dist. LEXIS 93217 (E.D. Pa. July 2, 2012) .................................8

*Crews v. Air & Liquid Sys. Corp.*,
    2014 U.S. Dist. LEXIS 20054 (N.D.N.Y. Feb. 18, 2014) ............................7

Dalton v. 3M Co., 2013 U.S. Dist. LEXIS 130407 (D. Del. Sept. 12, 2013)............7

D*umas v. ABB Grp., Inc. (In re Asbestos Litig.),* 2015 U.S. Dist. LEXIS 137291
    (D. Del. Sept. 30, 2015) ................................................................................5

*Faddish v. Buffalo Pumps*,
    881 F. Supp. 2d 1361 (S.D. Fla. Aug. 2, 2012) ............................................8

*Ferguson v. Lorillard Tobacco Co.*,
    2011 U.S. Dist. LEXIS 121982  (E.D. Pa. Mar. 2, 2011) ............................7

*In re Asbestos Litig. [Hoofman]*,
    2014 Del. Super. LEXIS 61 (Del. Super. Feb. 14, 2014)  ............................4, 5, 6

*Lindstrom v. A-C Prod. Liab. Trust*,
  424 F.3d 488 (6th Cir. 2005) 4,5,6,7,9,10
*Nicor Supply Ships Assocs. v. General Motors Corp.*,

876 F.2d 501, 505 (5th Cir. 1989) ..............................................................................7

*Regan v. Starcraft Marine LLC*,
    2010 U.S. Dist. LEXIS 25045 (W.D. La. Mar. 17, 2010) ............................7

*Saratoga Fishing Co. v. J.M. Martinac & Co.*,
    520 U.S. 875, 117 S.Ct. 1783 (1997) ...........................................................7

*Simonetta v. Viad Corp.*,
    197 P.3d 127 (Wash. 2008)........................................................................9, 10

*Stark v. Armstrong World Indus., Inc.*,
    21 F. App'x 371 (6th Cir. 2001) ...................................................4, 5, 6, 7, 9

*Sweeney v. Saberhagen Holdings*,
    2011 U.S. Dist. LEXIS 13563 (E.D. Pa. Jan. 13, 2011) ...............................7

*Tyler v. Various Defendants*,
    2011 U.S. Dist. LEXIS 111318 (E.D. Pa. July 5, 2011) ...............................5

*Tyler v. Various Defendants*,
    2011 U.S. Dist. LEXIS 111349 (E.D. Pa. July 5, 2011) ...............................5

*Walkup v. Air & Liquid Sys. Corp.*,
    2014 U.S. Dist. LEXIS 75892 (D. Del. June 4, 2014) 4................................5, 6, 8

**Other Authorities**

Thomas J. Shoenbaum, *Admiralty & Maritime Law* § 5-7 (5th ed. 2011) ...............8

**Rules**

FED. R. CIV. P. 56 ..................................................................................................4

I.     **NATURE AND STAGE OF PROCEEDINGS**

CBS Corporation is sued in this case as a successor to Westinghouse Electric Corporation ("Westinghouse"). The initial Complaint was filed in the Superior Court of New Castle County, Delaware on June 27, 2014. The case was removed to this Court by Defendant Air & Liquid Systems on August 18, 2014. Thereafter, Plaintiff filed an Amended Complaint in this Court on March 6, 2015.

Fact discovery is now closed. This is Westinghouse's Motion for Summary Judgment and Opening Brief in Support Thereof.

II.    **SUMMARY OF ARGUMENT**

Plaintiff alleges that Claude Denbow ("Mr. Denbow") developed mesothelioma due to exposure to asbestos during his service aboard the *U.S.S New Jersey* while in the United States Navy from 1954 to 1957. It is presumed that Plaintiff will argue that Mr. Denbow was exposed to insulation attached externally to a Westinghouse turbine present on the *U.S.S. New Jersey*. Charles Ricker, a former shipmate of Mr. Denbow's, testified about his own work as a machinist mate aboard the *U.S.S. New Jersey* and the equipment he worked with or around during his time on the ship including a Westinghouse turbine. He was unable to offer any testimony as to specific work performed by Mr. Denbow, also a machinist mate, on the ship or specific equipment he worked on or around which may have exposed him to asbestos. Specifically, Mr. Ricker could not testify that Mr. Denbow did any work on a Westinghouse turbine aboard the U.S.S. New Jersey or that any alleged work thereon exposed him to asbestos. Under a conflict of

law analysis, maritime substantive law should apply to any causation analysis.[1] The application of such law is fatal to Plaintiffs' claims against Westinghouse for two reasons.

First, Plaintiff has not identified or produced any evidence giving rise to a genuine issue of fact as to whether Mr. Denbow was frequently and regularly in close proximity to respirable asbestos dust associated with Westinghouse turbines (or any other Westinghouse piece of equipment) on the *U.S.S. New Jersey*. Absent such evidence, there can be no finding that any Westinghouse turbine was a substantial factor in causing the development of Mr. Denbow's injury. Thus, Plaintiff's proof of Westinghouse-specific causation has failed as a matter of law.

Second, even assuming *arguendo* that Plaintiff could prove that Mr. Denbow's injury was caused by external insulation on Westinghouse turbines, the undisputed evidence reflects that Westinghouse did not manufacture, supply, or install that insulation but instead Westinghouse delivered its equipment to the Navy uninsulated. Thus, Plaintiff's claims would fail even upon a showing of causation, as maritime law holds that an equipment manufacture cannot be held liable for injuries caused by insulation it did not manufacture or supply simply because it may have been foreseeable that the Navy would use such insulation with its equipment.

## III. STATEMENT OF FACTS

The Complaint in this matter alleges that Clyde Lee Denbow was exposed to asbestos containing equipment and/or products while serving in the United States Navy aboard the *U.S.S New Jersey* as a machinist mate from approximately 1954 to 1957. *See* Plaintiff's First Amended Complaint (attached hereto as Exhibit A). It is alleged that as a result of his asbestos

---

[1] *See* Restatement (Second) of Conflicts of Laws §§145-46 (1971). Restatement Section 146 provides that in a personal-injury case, a rebuttable presumption arises whereby the substantive law of the jurisdiction where the injury occurred (here maritime law) will govern a plaintiff's claims, unless some other jurisdiction has "a more significant relationship."

exposure in the Navy, as well as during his employment at a chemical facility after the Navy, Mr. Denbow developed mesothelioma. *Id.*

Mr. Denbow passed away on July 27, 2014 and was never deposed in connection with this litigation. Charles Ricker was deposed as a witness on behalf of Plaintiff. Mr. Ricker served on the *USS New Jersey* from the latter part of September 1952 until April 1956. *See* Videotaped Deposition of Charles Ricker, January 21, 2016, pp. 5-7 (relevant pages attached as Exhibit B). Mr. Ricker could not recall when he first met Mr. Denbow on the ship or the exact years they served simultaneously on the *New Jersey*. *Id*. at 7; *See also* Discovery Deposition of Charles Ricker, January 21, 2016, pp. 16-17 (relevant pages attached as Exhibit C). Mr. Ricker last had contact with Mr. Denbow when Mr. Ricker left the ship in 1956. *Id.* at 19-20. He had to look in his ship books to recall Mr. Denbow. *Id.* Mr. Ricker and Mr. Denbow both served time in Engine Room No. 2. *Id.* at 21. While Mr. Ricker was able to testify about what type of work *he* performed while on the New Jersey, he was unable to testify as to any specific work Mr. Denbow may have performed or what specific equipment he may have worked on. *Id.* at 24-25, 32-38, 43-46, 54-58. He specifically could not testify that Mr. Denbow ever worked on a Westinghouse turbine whereby he disturbed any external insulation or any other potential asbestos-containing component. *Id*. Moreover, Mr. Ricker testified that he was unaware of the maintenance history of the turbines on the ship but based on the age of the ship presumes repairs were made from the time the *U.S.S. New Jersey* was commissioned in 1942 and when Mr. Denbow served on the ship from 1954 to 1957. *Id.* at 46-48.

IV.   **ARGUMENT**

  A.   **Summary Judgment Standard**

Summary judgment exists "to isolate and dispose of factually unsupported claims." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The respective burdens of the parties on a Rule 56 summary judgment motion are well-established. *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof.") (internal citations omitted). Once the moving party has thus discharged its burden, the nonmoving party may not rely merely on allegations or denials in its own pleading; rather, its response must cite "to particular parts of materials in the record" to show the existence of an issue of triable fact." FED. R. CIV. P. 56(c)(1)(A).

  B.   **Failure of Plaintiffs' Proof of Westinghouse-Specific Exposure/Causation**

In any asbestos-related injury case under maritime law, the plaintiff must prove that defendant-attributable asbestos exposure was a substantial factor in causing his injury. See, *e.g.*, *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005); *Stark v. Armstrong World Indus.*, 21 Fed. Appx. 371, 375 (6th Cir. 2001); *Walkup v. Air & Liquid Sys. Corp.*, 2014 U.S. Dist. LEXIS 75892 (D. Del. June 4, 2014); *In re Asbestos Litig. [Hoofman]*, 2014 Del. Super. LEXIS 61 (Del. Super. Feb. 14, 2014). Mere proof of minimal exposure to defendant-

4

attributable asbestos will not satisfy this "substantial factor" test, nor is this standard met by evidence merely placing defendant-attributable asbestos aboard one or more vessels on which the plaintiff was allegedly exposed. *Lindstrom*, 424 F.3d at 492; *Stark*, 21 Fed. Appx. at 376; *Walkup*, 2014 U.S. Dist. LEXIS 75892 at *5; *In re Asbestos Litig. [Hoofman]*, 2014 Del. Super. LEXIS at *3. Rather, "proof of substantial exposure is required for a finding that a product was a substantial factor in causing injury." *Lindstrom*, 424 F.3d at 492. See also *Stark*, 21 Fed. Appx. at 376. Thus, in this case, Plaintiffs must show that Mr. Denbow's purported contact with Westinghouse-attributable asbestos was more than sporadic, casual, or minimal. In other words, a genuine issue as to Westinghouse-specific causation cannot be raised absent evidence that such exposure occurred with sufficient frequency and regularity that it can reasonably be viewed as a substantial factor in causing Mr. Denbow's injury. See, *e.g.*, D*umas v. ABB Grp., Inc. (In re Asbestos Litig.),* 2015 U.S. Dist. LEXIS 137291 (D. Del. Sept. 30, 2015) (granting summary judgment for Westinghouse where plaintiff failed to show beyond mere speculation and conjecture that plaintiff was exposed to asbestos from products manufactured or supplied by Westinghouse); *Tyler v. Various Defendants*, 2011 U.S. Dist. LEXIS 111318 (E.D. Pa. July 5, 2011) (granting a summary judgment as the plaintiff failed to show more than minimal asbestos exposure arising from his maintenance of the defendant's shipboard deaerating tank); *Tyler v. Various Defendants*, 2011 U.S. Dist. LEXIS 111349 (E.D. Pa. July 5, 2011) (granting a summary judgment as the plaintiff failed to show more than minimal asbestos exposure arising from his occasional gasket or packing replacement work on the defendant's marine pumps).

      Here, Plaintiff's evidence clearly fails as a matter of law when measured against these standards. Mr. Ricker was unable to testify to personally seeing Mr. Denbow working on

Westinghouse equipment or in the area when work was being performed on Westinghouse equipment by others. Quite the contrary, Mr. Ricker could only offer speculation that Mr. Denbow *could have been* exposed to asbestos based solely on his Navy occupation rating or classification. It is clear, however, that proof of defendant-specific exposure cannot be had for purposes of maritime law based on the non-personal knowledge-based speculation as to the type of work that might have been performed on a particular piece of equipment by a plaintiff (or by others in his immediate proximity) based solely on the plaintiff's shipboard job or occupational rating. *Tyler v. Various Defendants*, 2011 U.S. Dist LEXIS 111349 (E.D. Pa. July 5, 2011).

As such, Plaintiff has failed to raise a genuine issue of fact as to Mr. Denbow's alleged Westinghouse-specific asbestos exposure and Plaintiff's claims fail as a matter of law, entitling Westinghouse to summary judgment. *Lindstrom*, 424 F.3d at 492; *Stark*, 21 Fed. Appx. at 376; *Walkup*, 2014 U.S. Dist. LEXIS 75892 at *5; *In re Asbestos Litig. [Hoofman]*, 2014 Del. Super. LEXIS 61 at *3.

### C. <u>Westinghouse's Lack of Duty as to Equipment Insulation-Related Injuries</u>

Even if Plaintiff could show that exposure to an asbestos-containing component attached to Westinghouse equipment aboard the *New Jersey* was a substantial factor in causing Mr. Denbow's injury, which she cannot, the record is devoid of evidence that Westinghouse manufactured, supplied, or installed the insulation, or other component parts, to which Mr. Denbow was allegedly exposed. To the contrary, the evidence tends to establish that Westinghouse delivered its equipment to the Navy "bare metal" and that the Navy or its shipbuilder then purchased the insulation from third-parties and attached it to the Westinghouse

equipment.[2] Further, Mr. Ricker testified that he was unaware of the maintenance history of the turbines on the *New Jersey* and presumed based on the time between when the ship was first commissioned and when Mr. Denbow served on the ship, maintenance would have previously occurred and he could not identify the manufacturer or supplier of any replacement parts. *See* Discovery Deposition of Charles Ricker at 22-23; 29-31, 34, 43-44 (Ex. C). Such facts are fatal to Plaintiff's claims against Westinghouse as a matter of maritime law.

As a general rule of maritime law, a defendant charged with liability for a product-related injury "is only legally responsible for component parts which it either manufactured or distributed." *Sweeney v. Saberhagen Holdings*, 2011 U.S. Dist. LEXIS 13563 (E.D. Pa. Jan. 13, 2011) (citing *Lindstrom*, 424 F.3d at 494-95). *See also Lindstrom*, 424 F.3d at 495-97; *Stark*, 31 Fed. Appx. at 381; *Ferguson v. Lorillard Tobacco Co.*, 2011 U.S. Dist. LEXIS 121982 (E.D. Pa. Mar. 2, 2011); *Regan v. Starcraft Marine LLC*, 2010 U.S. Dist. LEXIS 25045 (W.D. La. Mar. 17, 2010).[3] Thus, "under maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012); Dalton v. 3M Co., 2013 U.S. Dist. LEXIS 130407 (D. Del. Sept. 12, 2013); *Ferguson*, 2011 U.S. Dist. LEXIS 121982 at *3. See also *Crews v. Air & Liquid Sys. Corp.*, 2014 U.S. Dist. LEXIS 20054 (N.D.N.Y. Feb. 18, 2014); *Walkup*, 2014 WL 2514353 at *4, n.7; *Cabasug v.*

---

[2] *See* Horne Aff., June 29, 2015, ¶¶ 24-25 (Ex. D).

[3] Such an approach is consistent with other aspects of maritime law narrowly defining a given manufacturer's "product" as the item actually delivered by the manufacturer at the time of sale, regardless of the foreseeability that other products or components might later be added to or used therewith. Cf. *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 884 (1997) (for purposes of maritime law's "economic loss doctrine," fishing gear affixed post-sale to a boat manufactured by the defendant was not an aspect of the defendant's own product and was, instead, "other property" even though the defendant had known at the time of sale that the gear would be used); *Nicor Supply Ships Assocs. v. General Motors Corp.*, 876 F.2d 501, 505 (5th Cir. 1989).

*Crane Co.*, 2013 U.S. Dist. LEXIS 180917 at *4 (D. Haw. Dec. 27, 2013); *Cabasug v. Crane Co.*, 989 F. Supp. 2d 1027 (D. Haw. Nov. 26. 2013); *Faddish v. Buffalo Pumps*, 881 F.Supp 2d 1361 (S.D. Fla. Aug. 2, 2012) (reaching the same conclusion under Florida law in a case falling within the court's admiralty jurisdiction, but noting that the same result would be reached under maritime law); *Crater v. 3M Co.*, 2012 U.S. Dist. LEXIS 93217 (E.D. Pa. July 2, 2012). Cf. 1 Thomas J. Shoenbaum, *Admiralty & Maritime Law* § 5-7 (5th ed. 2011). In *Conner*, *supra*, MDL-875 (the federal multi-district litigation for asbestos-related claims) considered this issue in depth and, in a well-written and thorough opinion, explained why an equipment manufacturer is not responsible for injuries caused by third-party asbestos-containing components (such as insulation), regardless of the foreseeability that such products would be used in conjunction with the manufacturer's own equipment.

    The *Conner* plaintiffs brought suit against multiple defendants, alleging that they had contracted mesothelioma due to Navy asbestos exposure. *Conner*, 842 F.Supp.2d at 794. The *Conner* defendants were manufacturers of turbines, pumps, boilers, and valves that used aboard the Navy ships on which the plaintiffs had served. *Id.* at 795. The plaintiffs could not prove that the defendants had manufactured, supplied, or installed the specific asbestos-containing components to which they were exposed, but they urged that the defendants were nonetheless liable for their injuries because of the foreseeable use of such products by the Navy with their equipment. *Id.* The defendants sought summary judgment, urging that, regardless of foreseeability, they owed no duty to warn or protect against injuries caused by asbestos-containing products which they did not manufacture or supply. *Id.*at 796. In considering the

issue, the *Conner* court analyzed the Sixth Circuit's holdings in *Stark* and *Lindstrom* as well as prior state court opinions considering the question before it.

In *Stark*, the plaintiff, a merchant seaman, alleged asbestos exposure while working in boiler and engine rooms. He claimed, in part, that he was exposed to asbestos-containing products attached to certain items of equipment, urging that the equipment suppliers were thus liable for his injury. The Sixth Circuit disagreed, refusing to hold the defendant liable for injuries caused by asbestos products they neither manufactured nor distributed, and affirmed summary judgment. *Conner*, 842 F.Supp.2d at 797-98 (citing *Stark*, 21 Fed. Appx. at 381).

In *Lindstrom*, the plaintiff filed suit against various manufacturers alleging that third-party asbestos components used in or on the defendants' shipboard equipment caused his asbestos-related disease. The *Lindstrom* court affirmed the district court's grant of summary judgment to several equipment suppliers based on its legal holding that, as a matter of maritime law, a manufacturer cannot be responsible for a third-party's asbestos products. *Conner*, 842 F.Supp.2d at 798 (citing *Lindstrom*, 424 F.3d at 495-97).

As noted above, the *Conner* court also considered a number of state court decisions grounded in state tort law in addressing the question before it, finding *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008) (en banc) and *Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008) (en banc) particularly persuasive. In *Simonetta*, a former Navy machinist brought negligence and strict liability claims against defendant Viad, the successor corporation to the manufacturer of a Navy evaporator. The evaporator required the use of asbestos-containing parts to function. The asbestos to which the machinist was exposed, however, was not manufactured, provided, or installed by Viad. The court viewed the asbestos-containing components, not the

9

evaporators, to be the harm-causing product. *Conner*, 842 F.Supp.2d at 799 (citing *Simonetta*, 197 P.3d at 138). The *Simonetta* court refused thus to hold Viad liable for its purported failure to warn because it was not within the chain of distribution of the injury-causing products (the specific asbestos components to which the plaintiff was exposed). *Simonetta*, 197 P.3d at 138.

In *Braaten*, the Washington Supreme Court considered "whether under common law products liability … the manufacturers were required to warn of the danger of exposure to asbestos in packing and gaskets in their products if they originally included in their products asbestos-containing packing or gaskets manufactured by others." *Braaten*, 198 P.3d at 501. The *Braaten* defendants provided pumps and valves to the Navy which the Navy then insulated with third-party asbestos-containing products. While none of the equipment manufacturers manufactured or supplied such insulation, some of their items of equipment had contained certain internal asbestos components (*e.g.*, gaskets or packing) at the time of delivery years before the plaintiff's work on that equipment. Because the plaintiff failed to show that he was exposed to any asbestos-containing component actually manufactured or supplied by the defendants, the court reinstated summary judgment for the defendants. *Conner*, 842 F.Supp.2d at 799 (citing *Braaten*, 198 P.3d at 504).

After thoroughly analyzing such authorities and assessing the policy motivations underlying product liability law, the *Conner* court:

> adopt[ed] *Lindstrom* and now holds that, under maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute. This principle is consistent with the development of products-liability law based on strict liability and negligence, relevant state case law, the leading federal decisions, and important policy considerations regarding the issue. A plaintiff's burden to prove a defendant's product caused harm remains the same in cases

> involving third-party asbestos manufacturers as it would in other products-liability cases based on strict liability and negligence.

*Conner*, 842 F.Supp.2d at 801.  After noting that plaintiffs had not pointed to any evidence creating a genuine issue of material fact as to whether the defendants manufactured or distributed the specific asbestos products to which plaintiffs were allegedly exposed, he granted the defendants' motions for summary judgment.  *Id*. at 803.

The same result is called for here.  First and foremost, Plaintiff has failed to produce any probative evidence tending to establish that Mr. Denbow was ever exposed to asbestos associated with any Westinghouse Navy equipment.  Moreover, to the extent he alleges exposure to asbestos insulation attached by the Navy to such equipment or other component parts manufactured by another company and installed by the Navy, Westinghouse is not liable for his injury as a matter of maritime law, entitling Westinghouse to a summary judgment.

## V. **CONCLUSION**

For the foregoing reasons, Westinghouse respectfully requests that its Motion for Summary Judgment be granted and that all claims and cross claims against it be dismissed with prejudice.

                                              Respectfully submitted,
                                              SWARTZ CAMPBELL LLC

                                              */s/ Jennifer A. Kapes*
                                              Beth E. Valocchi (DE Bar. Id. No. 2294)
                                              Jennifer A. Kapes (DE Bar Id. No. 4419)
                                              300 Delaware Avenue, Suite 1410
                                              Wilmington, DE 19801
                                              302-656-5935
                                              bvalocchi@swartzcampbell.com
                                              jkapes@swartzcampbell.com
                                              *Attorneys for CBS Corporation*

Dated: July 12, 2016