IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION )
)
ELLEN JEANENE PALMER, )
individually and as EXECUTRIX of the )
Estate of CLYDE LEE DENBOW )
)
Plaintiff, )
)
v. ) Civil Action No. 14-1064-SLR-SRF
)
AIR & LIQUID SYSTEMS )
CORPORATION, BUFFALO PUMPS )
DIVISION, et al., )
)
Defendants. )

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment of Defendants CBS Corporation ("CBS")[1] (D.I. 68), and Crane Co. ("Crane") (D.I. 72) (collectively "Defendants"). Plaintiff Ellen Jeanene Palmer ("Plaintiff"), individually and as executrix, opposes Defendants' motions for summary judgment. (D.I. 76, 77) For the reasons set forth below, and as indicated in the chart *infra*, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| CBS Corporation/Westinghouse | GRANT |
| Crane Co. | GRANT |

---

[1] CBS is sued as a successor-in-interest to Westinghouse Electric Corporation ("Westinghouse"). (D.I. 69 at 1)

## II. BACKGROUND

### A. Procedural History

Plaintiff filed this asbestos-related action against multiple defendants on June 27, 2014, in the Superior Court of Delaware. (D.I. 1 at ¶ 1) The complaint asserts that Clyde Lee Denbow ("Mr. Denbow") developed mesothelioma through his work as a naval machinist mate in the United States Navy from 1954 to 1957 aboard the USS New Jersey. (*Id.* at ¶ 2) On August 18, 2014, the case was removed to this court by Defendant Air & Liquid Systems Corporation[2] pursuant to 28 U.S.C. §§ 1442(a)(1)[3] and 1446. (*Id.* at ¶ 6) CBS and Crane individually filed the pending motions for summary judgment. (D.I. 68, 72) The motions were fully briefed by August 5, 2016. (D.I. 80, 81) On September 26, 2016, the court held oral argument on CBS's motion for summary judgment.[4]

### B. Facts

Plaintiff alleges that Mr. Denbow developed mesothelioma as a result of exposure to asbestos-containing products during his time in the Navy from 1954 to 1957 aboard the USS New Jersey, and while working at Koppers Chemical from 1965 to 1970. (D.I. 1 at ¶ 2; D.I. 73 at 2) Plaintiff contends that Defendants manufactured, sold, used, distributed, licensed, installed, or removed asbestos-containing products. (D.I. 1, Ex. A) Accordingly, Plaintiff asserts claims for negligence, strict liability, breach of warranty, wrongful death, direct intent employer liability,

---

[2] Air & Liquid Systems Corporation is a successor by merger to Buffalo Pumps, Incorporated. (D.I. 1)
[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).
[4] Crane did not request a hearing on its motion for summary judgment.

2

and punitive damages. (D.I. 77 at 4)

Mr. Denbow served in the United States Navy from January 6, 1954 until November 12, 1957. (D.I. 76 at 6) He was assigned to the USS New Jersey as a Machinist Mate Fireman Apprentice on August 27, 1954. (*Id.*) While aboard the ship, Mr. Denbow received several promotions, from Machinist Mate Fireman, to Machinist Mate First Class, to Machinist Mate Second Class. (*Id.*) Mr. Denbow's service concluded when he was detached from the USS New Jersey on August 21, 1957. (*Id.*)

After his naval service, Mr. Denbow worked as a laborer and lift truck operator at Koppers Chemical ("Koppers") from 1965 to 1970. (D.I. 73 at 2)

### C. Testimony of Product Identification Witness

Mr. Denbow passed away on July 27, 2014, and was never deposed for this case. (D.I. 69 at 3) Therefore, Plaintiff relies largely on the testimony of product identification witnesses to support the claim that Mr. Denbow was exposed to asbestos directly from Defendants' products and equipment during his time in the Navy and as an employee at Koppers.[5]

#### 1. Charles Ricker

Mr. Charles Ricker is Plaintiff's product identification witness regarding Mr. Denbow's service aboard the USS New Jersey. Mr. Ricker did not immediately recognize Mr. Denbow's name when he first heard it regarding this lawsuit. (1/21/16 Video Tr. at 19:12–16) He had to research Mr. Denbow's photograph to remember who he was. (*Id.*) The last time Mr. Ricker spoke to Mr. Denbow was when Mr. Ricker left the USS New Jersey. (*Id.* at 19:7–11)

---

[5] Plaintiff's claims against the moving defendants, Crane and CBS, are limited to alleged asbestos exposure that occurred when Mr. Denbow served on board the USS New Jersey. Therefore, Charles Ricker has been identified as the Plaintiff's only deponent for product identification for the USS New Jersey.

Mr. Ricker joined the Navy on April 26, 1952. (*Id.* at 5:24) Mr. Ricker served on the USS New Jersey from the latter part of September 1952 until April 1956. (*Id.* at 7:3–4) He testified that he did not recall when he met Mr. Denbow. (*Id.* at 7:7) However, Mr. Ricker believed he must have met Mr. Denbow at some period between 1952 and 1956. (*Id.* at 17:1–2) Mr. Ricker was a machinist mate in engine room No. 2 and No. 4 during his time on the USS New Jersey, where he was responsible for maintaining propulsion equipment. (*Id.* at 7:20–9:4) Mr. Ricker stated that he worked in engine room No. 2 with Mr. Denbow. (*Id.* at 9:7; 21:15) Mr. Ricker testified that Mr. Denbow, as a machinist mate, would have had the same responsibilities of maintaining propulsion equipment. (*Id.* at 10:7–11:12) However, Mr. Ricker had no specific recollection of Mr. Denbow performing any maintenance tasks aboard the USS New Jersey. (*Id.* at 25:11–19)

Mr. Ricker further testified that engine room No. 2 had a Westinghouse turbine, and that it was his job to operate and maintain it. (*Id.* at 12:10–13:23) Mr. Ricker stated it was highly likely the Westinghouse turbine had repairs performed to it before he boarded the ship, and, therefore, he did not know whether the equipment on the turbine had any original parts. (*Id.* at 47:11–20) He stated that one of the duties in the engine room was to remove asbestos-wrapped insulation from the Westinghouse turbine. (*Id.* at 14:4–11) When asked whether the cutting of the insulation was a dusty process, Mr. Ricker agreed that it was. (*Id.* at 29:6–9) Mr. Ricker further explained that he believed, based on his personal experience, that the insulation had asbestos. (*Id.* at 33:1–6) However, Mr. Ricker could not recall who manufactured any of the replacement parts. (*Id.* at 31:2–5; 52:7–54:7) Mr. Ricker believed the packing the Navy used contained asbestos because that was stated to him by his superiors. (*Id.* at 58:14–21) He has no memory of seeing the word "asbestos" on the packaging or on the packing material itself. (*Id.* at

54:8–13)

Mr. Ricker could not recall the manufacturer of the valves in engine room No. 2. (1/21/16 Tr. at 51:13–15) Mr. Ricker explained that when maintaining the valves, he would put packing glands around the valve stems. (*Id.* at 51:16–21) Mr. Ricker did not know the maintenance history of the valves. (*Id.* at 51:22–52:6)

### D. Plaintiff's Alleged Exposure from Each Defendant's Products

#### 1. CBS Corporation/Westinghouse

Plaintiff claims that Mr. Denbow was exposed to an asbestos insulated Westinghouse turbine while aboard the USS New Jersey. (D.I. 76 at 6) Plaintiff relies on Mr. Ricker's testimony that engine room No. 2, where Mr. Denbow worked, had a Westinghouse turbine. (*Id.* at 6–7) Specifically, Mr. Ricker testified that the Westinghouse turbines on the USS New Jersey used asbestos-containing insulation, packing, and gaskets. (D.I. 76, Ex. 5 at 13:19–14:11) Mr. Ricker testified that the cutting of the insulation created dust. (D.I. 69, Ex. C at 29:6–9)

#### 2. Crane Co.

Plaintiff claims that Mr. Denbow was exposed to asbestos from packing and gaskets used in conjunction with Crane valves while aboard the USS New Jersey. (D.I. 77 at 6–9) Plaintiff relies on Mr. Ricker's testimony that Mr. Denbow was exposed to asbestos during his time working in engine room No. 2. (*Id.*) Mr. Ricker was mentioned in Plaintiff's brief as a product identification witness of Crane products, however, Mr. Ricker did not identify a Crane product during his deposition. (D.I. 77 at 6–11; D.I. 77, Exs. 5, 6) Rather, Mr. Ricker's testimony provides general information on insulation and packing for valves aboard the USS New Jersey. (D.I. 73, Ex. C at 33:1–10)

## III. LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007);

*Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### B. Maritime Law

The parties do not dispute that maritime law applies to all Naval/sea-based claims.[6] (D.I. 62) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor[7] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F.

---

[6] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[7] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

Appx. 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[8] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012); *see* § III(C), *infra*.

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[9] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. Appx. at 376).

On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'"

---

[8] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[9] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. Appx. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

*Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. Appx. at 376 (citations omitted).

### C. Bare Metal Defense

Should the court decide that product identification has been established, it then considers the assertion of the "bare metal" defense by the moving defendants. The bare metal defense protects a defendant from liability on the basis that no duty to warn exists relating to asbestos-containing products the defendant did not manufacture or distribute, absent evidence that defendant did in fact manufacture or supply the asbestos-containing product to which Plaintiff was exposed. *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801–802 (E.D. Pa. 2012) (explaining the policy rationale for holding only those who make or sell the injurious product liable for the injuries alleged); *Malone v. Air & Liquid Sys. Corp.*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460 at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016). The 'bare metal defense' is recognized when maritime law applies. *Carper v. Gen. Elec. Co.*, No. 2:12-06164-ER, 2014 WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing *Conner*, 842 F. Supp. 2d at 801).

### IV. DISCUSSION

#### A. CBS Corporation/Westinghouse

The court recommends granting CBS's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether CBS's product was a

substantial factor in causing Mr. Denbow's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that Mr. Denbow was exposed to asbestos-containing products used in connection with Westinghouse turbines while serving aboard the USS New Jersey. (D.I. 76 at 6) Plaintiff relies largely on Mr. Ricker's testimony regarding Mr. Denbow's exposure to asbestos. (D.I. 76) Plaintiff also relies on the opinions of Arnold Moore, an engineer, and the testimony of Roy Charles Belanger, a former Westinghouse engineer, in support of the assertion that Westinghouse specified that asbestos insulation be used with its turbines, and at times, provided such insulation. (D.I. 76)

Mr. Ricker was assigned to engine room No. 2, the same engine room as Mr. Denbow. (1/21/16 Tr. at 24:12–20) It is undisputed that there were CBS (Westinghouse) turbines aboard the USS New Jersey. (D.I. 69, 76, 80) Mr. Ricker stated that he and Mr. Denbow would have had the same job responsibilities as a machinist mate. (1/21/16 Video Tr. at 11:8–12) As a machinist mate, Mr. Ricker stated he would have to replace packing glands on the turbine, which would involve removing asbestos covering. (1/21/16 Tr. at 33:18–23) Mr. Ricker stated that dust would form during the cutting of the insulation when working on the Westinghouse turbine. (*Id.* at 29:6–9) However, Mr. Ricker did not observe Mr. Denbow near a Westinghouse product, nor did he observe any work being performed on a Westinghouse product by Mr. Denbow. (1/21/16 Tr. at 44:6–46:12) Mr. Ricker also could not recall whether he and Mr. Denbow were in the same shift group. (1/21/16 Video Tr. at 17:8–13)

Mr. Ricker's testimony is not enough to establish exposure. Mr. Ricker did not testify as to having personal knowledge of Mr. Denbow working on a Westinghouse turbine.[10] (1/21/16

---

[10] In *Dumas*, the product identification witness did not have personal knowledge of the Plaintiff working on the accused product. This court granted summary judgment in defendant's favor based on lack of causation, despite the plaintiff's argument that the use of asbestos with

10

Tr. at 44:6–46:12) Even with the facts viewed in the light most favorable to Plaintiff, generalities and speculation do not create a dispute of material fact. *Walkup v. Air & Liquid Sys. Corp.*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014). Although Westinghouse product identification aboard the USS New Jersey is established, the evidence in the record fails to create a material issue of fact concerning the substantial exposure requirement. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff further argues that under *Quirin v. Lorillard Tobacco Co.*, Westinghouse is responsible for the effects of any exposure relating to its product, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d 760, 769–70 (N.D. Ill. 2014). Thus, Plaintiff contends that the bare metal defense does not apply because Westinghouse required asbestos-containing insulation for its turbines, and provided some of the insulation. (D.I. 76 at 8–11) In support of this assertion, Plaintiff cites to the deposition of Roy Belanger, who worked at Westinghouse from 1973 until his retirement in 2007. (*Id.* at 7) Belanger states that a Westinghouse turbine, made for marine application, would have been insulated because it was

---

defendant's product was foreseeable based on the witnesses' testimony. 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016).

powered by steam. (D.I. 76, Ex. 7 at 22:3–23:3) Belanger explains that insulation was necessary for the turbine to function. (*Id.* at 23:22–25) Plaintiff further relies on the opinions of Arnold Moore, an engineer. (D.I. 76 at 6) Moore states that during the 1940s and the 1950s, asbestos containing materials were the most commonly used materials for insulating turbines. (D.I. 76, Ex. 3 at 10) Moore further explains that Westinghouse provided asbestos packing and asbestos-containing gaskets for turbines built for DD 692 Class Destroyers, which were made during the same time period as the turbines for the USS New Jersey. (*Id.* at 7) Moore concludes that it is highly likely that Westinghouse utilized the same materials for the turbines on the USS New Jersey as it did for the DD 692 Class Destroyers. (*Id.*) Plaintiff highlights that the Westinghouse turbine diagrams state that asbestos felt blankets "shall" be provided for the turbines. (D.I. 76, Ex. 6 at bates stamps NJERS-111, NJERS-120, NJERS-121, NJERS-125). Plaintiff argues that Westinghouse had a duty to warn, because it was aware of the dangers of asbestos as early as the 1940s. (D.I. 76, Ex. 9 at 37)

      Application of the bare metal defense warrants summary judgment in CBS's favor, because Plaintiff fails to show that a material issue of fact exists as to whether Westinghouse provided the insulation to be used with its turbines. CBS asserts that Westinghouse delivered its turbines to the Navy uninsulated, and did not manufacture or supply any asbestos insulation. (D.I. 69 at 2) Furthermore, Belanger's deposition does not concern the USS New Jersey, but rather a different Navy vessel. (D.I. 76, Ex. 7) Additionally, Moore states that it is highly likely that Westinghouse provided asbestos packing, however, he is unable to state that Westinghouse did in fact supply turbines, with asbestos, for the USS New Jersey. (D.I. 76, Ex. 3) Moreover, during oral argument, CBS emphasized that the Westinghouse turbine diagrams state that "insulation [is] to be furnished and applied by shipbuilder" (D.I. 76, Ex. 6 at bates number

NJERS-111) and "insulation will be furnished and applied by the respective Navy yards after installation of the units in the vessels." (*Id.* at bates number NJERS-125). Lastly, CBS cites to the affidavit of Roger Horne, a Navy engineer, who states that the Navy required that all turbines be delivered "bare metal." (D.I. 69, Ex. D) Horne also states that the Navy did not allow manufacturers to insulate turbines prior to installation. (*Id.*)

Moreover, the court has previously declined to follow *Quirin*, and determined the weight of authority favors the bare metal defense.[11] *Conner*, 842 F. Supp. 2d at 794; *see also Lindstrom*, 424 F.3d at 495; *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Malone*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); *O'Neil v. Crane Co.*, 266 P.3d 987, 997–98 (Cal. 2012); *Taylor v. Elliot Turbomachinery Co.*, 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); *In re Asbestos Litig. (Howton)*, C.A. No. N11C-03218 ASB, 2012 WL 1409011, at *1 (Del. Super. Ct. Apr. 2, 2012); *In re Asbestos Litig. (Wolfe)*, C.A. No. N10C-08-258 ASB, 2012 WL 1415706, at *3–4 (Del. Super. Ct. Feb. 28, 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498–99 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127, 134–35 (Wash. 2008).

Plaintiff has failed to show that a material issue of fact exists as to whether Mr. Denbow was exposed to asbestos from products manufactured or supplied by Westinghouse. Consequently, the court recommends granting CBS's motion for summary judgment. *See*

---

[11] *See* § III(C), *supra*.

*Lindstrom*, 424 F.3d at 492.

### B. Crane Co.

The court recommends granting Crane's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether Crane's product was a substantial factor in causing Mr. Denbow's injuries. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that Mr. Denbow was exposed to asbestos-containing products used in connection with Crane valves while serving aboard the USS New Jersey. (D.I. 77 at 1) Specifically, Plaintiff argues Crane valves incorporated asbestos-containing packing. (*Id.* at 14) Plaintiff relies largely on Mr. Ricker's testimony regarding Mr. Denbow's exposure to asbestos. (D.I. 77) However, Mr. Ricker's testimony is not enough to establish causation. Mr. Ricker explained that he would have to use the end of a needle to get packing out of valves when doing maintenance work. (1/21/16 Video Tr. at 22:10–13) Mr. Ricker said the packing was dry when removed, and did not create dust when pulled out of the valve. (*Id.* at 22:14–19) Mr. Ricker stated that Mr. Denbow was assigned to engine room No. 2, but was unable to recall any specific products that Mr. Denbow used, repaired, or maintained. (1/21/16 Tr. at 25:11–19) Specifically, Mr. Ricker could not recall Mr. Denbow performing any work to any valve. (*Id.* at 39:13–16) Moreover, Mr. Ricker did not identify a Crane product in engine room No. 2. (*Id.* at 51:13–15) Mr. Ricker also did not know the maintenance history of any valve aboard the USS New Jersey. (*Id.* at 51:22–24)

Plaintiff counters that circumstantial evidence establishes that Mr. Denbow was exposed to asbestos from Crane valves. (D.I. 77) First, Plaintiff states that drawings produced by Crane show that several valves in the engine rooms on the USS New Jersey were manufactured by Crane. (*Id.* at 7; D.I. 77, Ex. 4) Secondly, Plaintiff cites to the declaration of Arnold Moore, an

14

engineer, who states that Crane manufactured and provided valves for the main propulsion system aboard the USS New Jersey. (D.I. 77, Ex. 3) Plaintiff also relies on the deposition of William McLean, a corporate representative of Crane, who testified that Crane used asbestos packing in its valves, and that the packing would have to be replaced due to normal wear and tear. (D.I. 77, Ex. 14 at 15:17–21; 51:6–15)

Contrary to Plaintiff's assertion, the evidence is insufficient to withstand a motion for summary judgment, even when viewed in the light most favorable to Plaintiff. The documents produced by Plaintiff, and the declaration of Moore, show that Crane valves were located in engine room No. 2, but they do nothing more than show the presence of Crane valves in engine room No. 2—they do not establish exposure. Moreover, McLean's testimony does not establish that the valves on the USS New Jersey contained asbestos packing manufactured by Crane. Thus, Plaintiff has not produced evidence sufficient to create a genuine issue of fact as to whether Mr. Denbow was substantially exposed to respirable asbestos dust from a Crane product. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff further argues that under *Quirin*, Crane is responsible for the effects of any exposure relating to its products, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d at 769–70. Thus, Plaintiff contends that the bare metal defense

does not apply because Crane incorporated asbestos-containing materials in its valves, specified the use of asbestos-containing replacement packing and gaskets with its valves, and sold asbestos-containing replacement materials for its valves. (D.I. 76 at 8–11) In support of this assertion, Plaintiff cites to a document produced by Crane, dated October 1, 1942, that lists materials for the USS New Jersey, which refers to packing that is "coil form, asbestos and wire jacket." (D.I. 76, Ex. 7) Plaintiff also relies on Crane's objections and responses to interrogatories, filed in 2011, from a lawsuit in the state of New York. (D.I. 77 at 8) In a response, Crane states, "Certain of the valves had enclosed within their metal structure asbestos-containing gaskets, packing, or discs. Crane Co. did not manufacture the asbestos-containing components that may have been encapsulated within the valves, but purchased them from other companies." (D.I. 77, Ex. 8 at 12) Plaintiff also highlights that Crane sold asbestos-containing packing and gaskets in its 1952 piping catalog (D.I. 77, Ex. 9), and that Crane was "acknowledged" in a 1946 Navy manual, entitled "Navy Machinery," which states asbestos insulation should be used for high temperatures. (D.I. 77, Ex. 10) Additionally, Plaintiff emphasizes that Crane's purchase orders show that it sold asbestos-containing packing and gasket replacement parts to the Navy. (D.I. 77, Exs. 11, 12) Plaintiff highlights that in 1943, Crane created a manual on how to remove packing. (D.I. 77, Ex. 13 at 26) Lastly, Plaintiff relies on the testimony of Mr. McLean, in which he states Crane sold replacement gaskets and packing. (D.I. 77, Ex. 14 at 50:23–51:5)

     Nonetheless, application of the bare metal defense warrants summary judgment in Crane's favor, because Plaintiff fails to show that a material issue of fact exists as to whether Crane manufactured and supplied asbestos-containing valves for the USS New Jersey. The drawings depicting the valves in the engine room, and the list of materials within the drawings,

only establish that Crane valves were in the engine room, and that at the time of installation, Crane listed asbestos packing as a type of insulation. (D.I. 77, Exs. 4, 7) The drawings and material list do not establish that Crane supplied asbestos-containing valves. Moreover, the material list is dated October 1, 1941, roughly thirteen years before Mr. Denbow boarded the USS New Jersey. (D.I. 77, Ex. 7) Plaintiff states that the testimony of Mr. Ricker, the opinions of Moore, and the testimony of McLean, establish that replacing the packing was expected and a regular part of maintenance of the valves. (D.I. 77 at 12) Thus, there is no evidence of record to support whether any packing removed from the Crane valves from 1954 to 1957, was original to installation of the valves. Plaintiff also admits that the purchase orders are not specific to the USS New Jersey. (D.I. 77 at 9) Therefore, the orders do not establish that Crane sold replacement asbestos-containing packing and gaskets for the USS New Jersey. Moreover, the 2011 interrogatory response, the 1952 piping catalog, the 1946 Navy Manual, the 1943 "packing removal manual," and McLean's testimony, do not establish that Crane installed asbestos-containing valves aboard the USS New Jersey. (D.I. 77, Exs. 8, 9, 10, 13, 14)

Crane asserts there is no evidence that it manufactured or sold any asbestos-containing product for the USS New Jersey. (D.I. 73 at 7–8) Crane emphasizes that its corporate representative, Anthony Pantaleoni, testified that Crane valves could be used with asbestos and non-asbestos packing, and did not require any insulation to operate properly. (D.I. 73 at 4–5; D.I. 73, Exs. D at 52:20–25, E, F) Crane further argues that the Navy would have specified the type of packing to be used, not Crane. (D.I. 81 at 5–6; *see also* D.I. 81, Ex. C at 35:18–36:2)

Again, I recommend that the court decline to follow *Quirin*. See § IV(A), *supra*. As such, the bare metal defense forms the basis for recommending dismissal of Plaintiff's claims against the moving defendants in the instant case. *Malone*, 2016 WL 4522164, at *5 (D. Del.

Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460 at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016).

Plaintiff has failed to show that a material issue of fact exists as to whether Mr. Denbow was exposed to asbestos from products manufactured or supplied by Crane. Consequently, the court recommends granting Crane's motion for summary judgment. *See Lindstrom*, 424 F.3d at 492.

V. **CONCLUSION**

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting CBS's motion for summary judgment, and granting Crane's motion for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| CBS Corporation/Westinghouse | GRANT |
| Crane Co. | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. Appx. 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 30, 2017

_____
Sherry R. Fallon
United States Magistrate Judge